UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERESA LONG,

                Plaintiff,        Civil Action No. 13-14879
                                          Honorable Nancy G. Edmunds
                                          Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 16, 19, 20]**

Plaintiff Teresa Long ("Long") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [19,[1] 20] which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

I.    **RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Long was disabled for the closed period

---

[1] Long first filed a motion for summary judgment on June 8, 2014, asserting that the electronic transcript filed by the Commissioner was incomplete. (Doc. #11). On July 18, 2014, the Commissioner filed a corrected transcript. (Doc. #15). On August 22, 2014, Long filed an amended motion for summary judgment, asserting that the transcript remained incomplete. (Doc. #16). Consequently, the Commissioner filed additional portions of the transcript on August 26, 2014 (Doc. #17), and Long filed a second amended motion for summary judgment on September 24, 2014 (Doc. #19). It is this motion that contains the substance of Long's summary judgment arguments.

from October 11, 2007, through September 22, 2010, but was no longer disabled beginning on September 23, 2010. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [20] be GRANTED, Long's Motions for Summary Judgment [11, 16, 19] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the Commissioner's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On May 8, 2006, Long filed applications for DIB and SSI, alleging a disability onset date of June 6, 2005. (Tr. 88-96). These applications were denied initially on September 6, 2006. (Tr. 45-53). Following a hearing on September 18, 2008, ALJ Paul Armstrong issued a written decision on January 20, 2009, finding that Long was not disabled under the Act. (Tr. 10-18). On August 27, 2009, the Appeals Council denied review of ALJ Armstrong's decision. (Tr. 1-3). Thereafter, Long filed a civil complaint in the United States District Court for the Eastern District of Michigan, and on March 31, 2011, this Court reversed the ALJ's decision and remanded the case for further proceedings. (Tr. 361-81).

After the case was remanded,[2] Long appeared at a second administrative hearing, held on October 13, 2011, before ALJ Regina Sobrino. (Tr. 718-49). Long, who was represented by attorney Daniel Pollard, testified at the hearing, as did vocational expert Stephanie Leech. (*Id.*). On April 13, 2012, the ALJ issued a partially favorable written decision, finding that Long was disabled from October 11, 2007, through September 22, 2010. (Tr. 319-32). ALJ Sobrino further found, however, that Long was not disabled prior to October 11, 2007, or after September 22, 2010. (*Id.*). On September 27, 2013, the Appeals Council denied review, rendering ALJ

---

[2] On remand, the Appeals Council instructed the ALJ to associate this 2006 claim with Long's subsequent applications for DIB and SSI, filed on September 29, 2009. (Tr. 385).

2

Sobrino's decision the Commissioner's final decision. (Tr. 309-12). Long filed for judicial review of that final decision on November 26, 2013. (Doc. #1).

### B. Framework for Disability Determinations

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis

3

reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

If a claimant is found to be disabled during this five-step process, the ALJ must determine whether her disability continues through the date of the decision or whether the claimant is instead only entitled to a closed period of disability. This is accomplished by applying the "medical improvement" standard articulated at 20 C.F.R. §404.1594 (for DIB claims) and 20 C.F.R. §416.994 (for SSI claims). *See, e.g., Love v. Comm'r of Soc. Sec.* 605 F. Supp. 2d 893, 903-04 (W.D. Mich. 2009); *Long v. Sec'y of Health & Human Servs.*, 45 F.3d 430 (6th Cir. 1994).

With one exception,[3] the medical improvement analysis is the same for DIB and SSI claims and involves determining the following: (1) whether the claimant has an impairment or combination of impairments that meets or equals in severity a listed impairment; (2) whether the claimant has experienced "medical improvement"[4] in her condition; (3) whether the claimant's medical improvement has resulted in an increase of her RFC; (4) whether the claimant's current impairments are in combination severe; (5) if the claimant's current impairments are severe, whether the claimant's RFC precludes the performance of her past relevant work (if not, the claimant will be found to not be disabled); and (6) if the claimant's RFC does preclude the performance of her past relevant work, whether there exists other work that the claimant can perform despite her limitations. *See Love,* 605 F. Supp. 2d at 904 (citing 20 C.F.R. §§404.1594(f), 416.994(b)).

---

[3] The medical improvement analysis applicable to DIB claims also asks whether the claimant is performing substantial gainful activity, which is not relevant in this case. *See* 20 C.F.R. §404.1594(f)(1).

[4] Medical improvement is defined as "any decrease in the medical severity" of the impairments on which the determination of disability was based, as established by improvement in symptoms, signs, and/or laboratory findings. *See* 20 C.F.R. §§404.1594(b)(1), 416.994(b)(1).

**C.     Background**

    *1.     Plaintiff's Reports and Testimony*

At the time of the 2011 administrative hearing, Long was 51 years old. (Tr. 722-23). She lived alone in an apartment. (Tr. 722). She completed the twelfth grade but had no college education. (Tr. 712, 723). Long indicated that she has been diagnosed with bipolar disorder, and she has not worked since 2006, when she was "let [] go because of [her] illness." (Tr. 707, 723-24, 732). Specifically, she experienced panic attacks and anxiety, and was often short-tempered with customers, when working as a waitress. (*Id.*).

Long testified that she still experiences panic attacks (when her heart races and she becomes confused) at least ten times a week. (Tr. 725). Crowds, "new people," and confusion trigger these attacks. (Tr. 731). She is able to perform chores such as cooking, cleaning, and laundry, however, and she shops for groceries in a small store near her home. (Tr. 651-52, 725-26). She testified that she visits her sister and brother and, on good days, bowls on a team with family and friends. (Tr. 726-27). She enjoys reading and is able to drive, but has difficulty sleeping. (Tr. 650, 652, 727, 733). She has difficulties with memory, completing tasks, concentration, understanding, and following directions, and she does not finish what she starts. (Tr. 654, 732). At the time of the hearing, Long was taking several medications, including Prozac, Lamictal, Wellbutrin, Abilify, and Klonopin. (Tr. 728).

    *2.     Medical Evidence*

The Court has thoroughly reviewed Long's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

5

        *3.*     *Vocational Expert's Testimony*

Stephanie Leech testified as an independent vocational expert ("VE") at the 2011 administrative hearing. (Tr. 741-46). The ALJ asked the VE to imagine a claimant of Long's age, education, and work experience, who could perform work at all exertional levels, with the following nonexertional limitations: as a result of her moderate impairment in concentration, persistence, or pace, she was limited to performing simple, routine, repetitive work involving one- and two-step tasks; limited to low stress work (no fast-paced work, no work that involves quotas, no assembly line work); no interaction with the public or more than occasional and superficial contact with co-workers and supervisors; supervision should be limited to routine interactions and routine reminders about work tasks; there should be no more than average production standards; and speed should not be critical. (Tr. 741-42). The VE testified that the hypothetical individual would not be capable of performing Long's past relevant work. (Tr. 742). However, the VE testified that the hypothetical individual would be capable of working as a packer (4,000 jobs in Michigan's lower peninsula), and in food preparation (2,100 jobs), bench assembly (2,000 jobs), and material mover positions (1,100 jobs). (Tr. 742-43).

**D.**     **The ALJ's Findings**

Following the analyses described above, the ALJ found that Long was disabled under the Act for the closed period from October 11, 2007, through September 22, 2010. At Step One, the ALJ found that Long has not engaged in substantial gainful activity since June 6, 2005, her alleged onset date. (Tr. 323). At Step Two, the ALJ found that Long has the severe impairments of bipolar disorder and an anxiety-related disorder. (*Id.*). At Step Three, the ALJ found that, from October 11, 2007, through September 22, 2010, Long's mental impairments met the criteria of Listing 12.06 (anxiety-related disorders). (Tr. 323-27). The ALJ further concluded, however,

that beginning on September 23, 2010, medical improvement occurred such that Long's mental impairments no longer met the requirements of Listing 12.06. (Tr. 328-29).

The ALJ then assessed Long's RFC, concluding that, as of September 23, 2010, Long had the RFC to perform work at all exertional levels, with the following nonexertional limitations:

> … as a result of moderate impairment of functioning in the area of concentration, persistence or pace, the claimant is limited to performing simple, routine, repetitive work involving 1- and 2-step tasks. She is limited to performing low stress work (no fast-paced work, no work that involves quotas, no assembly line work) that does not involve interaction with the public, or more than occasional and superficial contact with co-workers and supervisors. Supervision should be limited to routine interactions and routine reminders about work tasks. There should be no more than average production standards, and speed should not be critical.

(Tr. 329-31). At Step Four, the ALJ determined that, at all relevant times, Long has been unable to perform her past relevant work. (Tr. 331). At Step Five, however, the ALJ concluded, based in part on the VE's testimony, that, since September 23, 2010, Long has been capable of performing a significant number of jobs that exist in the national economy. (Tr. 331-32). As a result, the ALJ concluded that Long's disability ended on September 23, 2010. (Tr. 332).

### E.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the

merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence

supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F. Analysis**

*1. Waiver*

It is difficult to discern Long's specific arguments in support of her motion for summary judgment. Her motion consists almost entirely of a compilation of quotations of black letter case law, with little accompanying analysis or application of that law to the facts of her case. Long does assert (in a heading in her brief) that the ALJ erred in "assessing [her] credibility and by failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray [her] impairments." (Doc. #19 at 6). But, Long does not explain with any particularity whatsoever <u>which</u> medical records the ALJ purportedly "fail[ed] to properly evaluate," or <u>why</u> the ALJ should not have discounted her credibility, or exactly <u>how</u> the ALJ's hypothetical was deficient. (*Id.*).

Indeed, although Long provides a factual recitation of certain portions of her testimony and medical record (*Id.* at 10-11), she does not actually allege that the ALJ erred in evaluating any specific piece of evidence. Long's brief is similar to one her counsel filed in another matter, *Burger v. Comm'r of Soc. Sec.*, 2013 WL 2285375 (E.D. Mich. May 23, 2013), which the court found to present no non-waived issue. And, on March 24, 2014, Chief Judge Rosen issued a scathing commentary on Long's counsel's approach to his clients' summary judgment briefs:

> … [T]his reliance on conclusory assertions and absence of developed argument has become the calling card of Plaintiff's counsel in a number of recent Social Security cases, and nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel. In light of this lamentable record of filing one-size-fits-all briefs and inviting the Judges of this District to formulate arguments and search the record on his clients' behalf, Plaintiff's counsel is strongly cautioned that this Court will carefully examine his submissions in future suits to

9

> ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case. Failure to adhere to these standards will result in the imposition of sanctions and possible referral of counsel for disciplinary proceedings.

*Fielder v. Comm'r of Soc. Sec.*, 2014 WL 1207865, at *1, n. 1 (E.D. Mich. Mar. 24, 2014) (internal citations omitted). The Court notes that Long's brief in the instant case – which was filed <u>after</u> issuance of the *Fielder* opinion – is yet another "one-size-fits-all" brief, containing the same "conclusory allegations" and "absence of developed argument" that Chief Judge Rosen found wholly insufficient in *Fielder*. Here, then, the Court could find that Long has waived any argument she has that the ALJ erred in finding her disability ended on September 22, 2010. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations omitted). Nonetheless, in the interest of ensuring that Long's claim for benefits is fairly considered, the Court will endeavor to address the arguments alluded to in her motion.

> 2. *Substantial Evidence Supports the ALJ's Finding that Long Was Not Disabled as of September 23, 2010, Due to Medical Improvement*

As set forth above, the ALJ found that, from October 11, 2007, through September 22, 2010, Long's impairments met the criteria of Listing 12.06 and, thus, she was disabled under the Act. (Tr. 323-27). The ALJ further concluded, however, that beginning on September 23, 2010, Long experienced medical improvement such that she no longer met or medically equaled the requirements of Listing 12.06 (or any other Listing). (Tr. 328-29). The ALJ further concluded that, as of that date, Long was not disabled because she had the RFC to perform work at all exertional levels, with the following nonexertional limitations: as a result of moderate impairment of functioning in the area of concentration, persistence or pace, Long was limited to performing simple, routine, repetitive work involving 1- and 2-step tasks; she was limited to

performing low stress work (no fast-paced work, no work that involves quotas, no assembly line work) that does not involve interaction with the public, or more than occasional and superficial contact with co-workers and supervisors; supervision should be limited to routine interactions and routine reminders about work tasks; there should be no more than average production standards; and speed should not be critical. (Tr. 329-31). Based in part on the VE's testimony, the ALJ concluded that, since September 23, 2010, Long has not been disabled, because she has been capable of performing a significant number of jobs that exist in the national economy. (Tr. 331-32).

        *a.*     *Credibility*

In her motion, Long argues that the ALJ should have found that her disability continued after September 22, 2010.[5] (Doc. #19 at 10-11). In doing so, Long challenges the ALJ's determination that, beginning on September 23, 2010, she was not fully credible regarding her mental impairments. (*Id.*). In making this argument, however, Long ignores the numerous reasons articulated by the ALJ for finding her less than fully credible, and she does not cite any medical evidence that the ALJ failed to properly consider. As set forth below, the ALJ reasonably discounted Long's allegations of disabling limitations because they were inconsistent with the objective medical evidence and the record as a whole. (Tr. 328-31).

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health &*

---

[5] Long does not challenge the ALJ's conclusion that she was not disabled prior to October 11, 2007. (Doc. #19). Thus, Long has waived any argument she might have that the ALJ erred with respect to this time period. *See, e.g., Jernigan v. Comm'r of Soc. Sec.*, 2014 WL 1328177, at *6 n. 3 (E.D. Mich. Mar. 28, 2014) ("Because Plaintiff did not make this argument before the Magistrate Judge in her motion for summary judgment, this argument is deemed waived.").

*Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptom is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of her symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §416.929.

Here, the ALJ adequately discussed the objective medical evidence regarding Long's impairments and reasonably explained why such evidence compelled a finding that, beginning on September 23, 2010, her allegations of disability were not fully credible. (Tr. 328-30). For example, the ALJ noted that treatment records from Hurley Mental Health Associates ("Hurley"), dated September 23, 2010, indicate that Long had a "positive response" to medication changes, that her anxiety was stable, that she had had no panic attacks, and that her mood was euthymic. (Tr. 329, 458). The ALJ also considered subsequent treatment notes from Hurley, from November 2010 to February 2011, which showed that Long did not report any panic attacks, had experienced "no bad mood swings," and that her mood was "stable" and "euthymic." (Tr. 330, 452-56). Moreover, the ALJ noted that, despite the fact that the record was left open after the hearing for the submission of additional medical evidence, there are no

12

mental health treatment records from Hurley after February 2011. (Tr. 329-30).

The ALJ also considered the fact that May 2011 treatment records from Hamilton Community Health Network ("Hamilton") document that Long had not been to that clinic in 1 ½ years. (Tr. 330, 414). The ALJ further noted that, at a May 2011 examination, Long had an appropriate mood and affect, her insight and judgment were intact, she had intact recent and remote memory, and she was alert and fully oriented. (Tr. 330, 414-15). And, the ALJ noted that a July 2011 treatment note from Hamilton did not refer to any psychiatric abnormality. (Tr. 330, 412-13). Finally, the ALJ considered the fact that, after September 2010, no treating or examining source opined that Long was disabled or had limitations that exceed those described in the ALJ's RFC. (Tr. 331). *See, e.g., Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 177 (6th Cir. 2009) ("As the ALJ's review of the administrative record indicates, no other treating or consultative physicians concluded that Price was disabled."). In light of the foregoing evidence, the ALJ's post-September 22, 2010 RFC finding adequately accommodated Long's mental impairments. (Tr. 329-31).

In the face of all of this evidence, Long relies primarily on her own testimony and her subjective complaints to physicians. (Doc. #19 at 10-11). However, even where there is "objective medical evidence of an underlying medical condition … an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003). Long does point to two medical source statements, in which treating sources opined that she was extremely limited in the ability to understand, remember, and carry out complex job instructions, and markedly limited in other areas. (Doc. #19 at 11 (citing Tr. 417-18)). However, both of these medical source statements were completed <u>before</u> September 23,

13

2010. (Tr. 417-18). Thus, they do not undermine the ALJ's conclusion that Long experienced medical improvement as of that date. (Doc. #19 at 11).[6]

Moreover, the mere fact that certain aspects of the medical record are consistent with the claimant's alleged impairment does not necessitate a finding that the claimant was fully credible regarding *the extent* of her symptoms caused by the impairment. This is precisely why the ALJ must consider and weigh "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of her symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. §416.929. Here, the ALJ determined, based on a review of *all* of the medical evidence, as well as Long's testimony, that, after September 22, 2010, Long was partly credible to the extent her claimed level of impairment did not exceed the RFC determined by the ALJ. (Tr. 329-31). Again, Long has not shown that the ALJ's overall evaluation of the evidence is in any way erroneous.

For all of these reasons, the Court finds that Long has not shown a "compelling reason" to disturb the ALJ's credibility determination. *Smith*, 307 F.3d at 379. Here, where the ALJ gave a reasonable explanation for discounting Long's credibility after September 23, 2010, and that explanation is supported by substantial evidence, her credibility finding should not be disturbed.

---

[6] Long also cites to a November 2010 treatment note, which indicates that she complained of "limited energy" and "limited motivation," and a February 2011 treatment note that indicates she said she was "not sleeping well." (Doc. #19 at 11 (citing Tr. 452, 455)). These comments, however, appear to be statements made by Long, as opposed to observations made by her providers. And, although Long also cites to a treatment note that revealed "increased depression and tearfulness" (*Id.* at 11 (citing Tr. 460)), that note was from August 2010 and, thus, does not support her claim that her disability continued after September 22, 2010.

14

### b. *Adequacy of the Hypothetical*

Long also asserts in her brief that "for a response to a hypothetical question to constitute substantial evidence, each element of a hypothetical must accurately describe the Claimant." (Doc. #19 at 10 (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)). Then, however, Long simply states in conclusory fashion that "because each element of the [ALJ's] hypothetical does not accurately describe [her] in all significant, relevant respects, the VE's testimony at the hearing should not constitute substantial evidence." (*Id.*). Although Long phrases this as a Step Five finding, the Court concludes that Long is attempting to refute the RFC finding via a purported Step Five error. *See Kirchner v. Colvin*, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed.").

To the extent Long argues that the ALJ's hypothetical was deficient, it appears she believes it should have included a requirement that she would be absent from work more than one day per month. (Doc. #19 at 12). The VE testified that this limitation would preclude all competitive work. (Tr. 743). The problem, however, is that Long has not pointed to any medical evidence supporting this limitation, and the Court has found none. Accordingly, the ALJ was not required to include such a limitation in the hypothetical question she posed to the VE. *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (an ALJ is only required to pose those hypothetical limitations that he finds credible); *see also Cookman v. Comm'r of Soc. Sec.*, 2013 WL 6631463, at *9 (E.D. Mich. Dec. 17, 2013) (same). As such, Long's argument that the ALJ formed an inaccurate hypothetical lacks merit.

For all of the above reasons, and upon an independent review of the entire record, the

Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Long's Motions for Summary Judgment **[11, 16, 19]** be **DENIED**, the Commissioner's Motion **[20]** be **GRANTED**, and this case be **AFFIRMED**.

Dated: February 27, 2015　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 27, 2015.

                                            s/Eddrey O. Butts
                                            EDDREY O. BUTTS
                                            Case Manager